IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TROY OLMSTED,

                      Plaintiff,

          v.

MONICA HORNER,
SARA MASON, and ROBERT HABLE;
all in their official and personal capacities

                      Defendants.

OPINION and ORDER

08-cv-438-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In an order dated July 30, 2008, I severed into three actions the claims raised by plaintiff Troy Olmsted in his original complaint. In addition, I severed the claims raised by former co-plaintiff Jerome Metcalfe and remanded them to state court. In this case, plaintiff is prosecuting his claims that defendants Richard Schneider, Sara Mason, Monica Horner and Robert Hable violated his Eighth Amendment rights and his right to free speech, access to courts, equal protection and due process by prohibiting him from sending mail to his ex-wife during a family law dispute, and that defendants Mason, Schneider and Frank violated his rights to free speech, access to courts, equal protection and due process by prohibiting him from exchanging mail with his co-defendant in a criminal case. Although I did not

1

include Matthew Frank and Richard Schneider as defendants when I severed this case from the original cause of action, plaintiff is asserting the claims raised in this case against both of them.  Therefore, Matthew Frank and Richard Schneider are rightfully part of this lawsuit and will be treated as defendants.

This case was removed to this court on May 30, 2008 and has yet to be screened as required under 28 U.S.C. § 1915A.  Much of the delay has been a result of plaintiff's repeated attempts to remand the case back to state court.  Now plaintiff has asked for further delay to allow him an opportunity to amend the complaint.  As I explained in Case No. 08-cv-309-bbc, plaintiff's motion to delay screening to allow him to amend his complaint will be denied.  Because no good reason exists for further delay in this case, I will screen plaintiff's complaint pursuant to § 1915A, which requires the court to dismiss his complaint if it is legally frivolous, malicious, fails to state a claim upon which relief may be granted or asks for money damages from a respondent who by law cannot be sued for money damages.  Petitioner is a pro se litigant, so his complaint will be construed liberally as it is reviewed for these potential defects.  Haines v. Kerner, 404 U.S. 519, 521 (1972).

All of plaintiff's claims will be dismissed.  His claims that defendants subjected him to cruel and unusual punishment and violated his right to equal protection will be dismissed because there is no basis in the complaint for such claims.  His claim that defendants violated his First Amendment right to free speech by restricting correspondence between him

2

and his co-defendant will be dismissed because prison officials may bar inmate-to-inmate correspondence without violating the First Amendment.  His claim that defendants violated his right to free speech by preventing him from communicating by mail with his ex-wife and daughter will be dismissed because he was attempting to send the mail to his ex-wife, who was an unwilling recipient of his mail.  His claims that defendants retaliated against him on two occasions will be dismissed because he failed to identify a person responsible for one of the retaliatory acts and the other was a cumulative act that would not have deterred a person of ordinary firmness from engaging in protected activity.  His claims that defendants violated his right to access the courts by restricting his mail will be dismissed because neither mail restriction interfered with his ability to seek judicial relief in an underlying cause of action. Finally, his due process claim will be dismissed because neither the state nor the federal constitution requires process before placing a prisoner on room confinement for 15 days.

From plaintiff's complaint I draw the following allegations of fact.

## ALLEGATIONS OF FACT

### A.  <u>Parties</u>

At all times relevant to this complaint, plaintiff Troy Olmsted was an inmate at Green Bay Correctional Institution and the Wisconsin Secure Program Facility.

Defendants Monica Horner and Sara Mason are security supervisors for the

3

Wisconsin Secure Program Facility.  They are responsible for the security of the inmates , supervise staff, investigate conduct violations and determine appropriate disciplinary measures.

At times relevant to this complaint, defendant Matthew Frank was Secretary of the Department of Corrections responsible for the operations of the institutions and was the final decisionmaker in the inmate complaint review system.  Defendant Schneider is Warden at the Wisconsin Secure Program Facility.  He is responsible for operation of the institution, including the custody, care and discipline of the inmates.


B.  Background

On September 27, 2005, plaintiff was served conduct report CR 1687515, charging him with possession of contraband, and theft and damage or alteration of property for his alleged involvement in a scheme to introduce intoxicants into the Green Bay Correctional Institution using the "teddy bear project."

Plaintiff wrote several prison officials, including defendant Frank, several times, asserting that he was not involved in the smuggling scheme and had evidence to support his position and objecting to the report on procedural grounds, explaining that the report was "unsubstantiated" and violated Department of Corrections rules.  After a hearing was held on plaintiff's conduct report, plaintiff was sentenced to 360 days of program segregation and

4

eight days of adjustment segregation.  On December 17, 2005, the Program Review Committee transferred plaintiff to the Wisconsin Secure Program Facility.

On April 13, 2006, plaintiff filed a common law writ of certiorari, Case No. 06-CV-1148, in the Circuit Court for Dane County, against William Pollard and defendant Frank. During litigation of the case, plaintiff moved to strike the return as being non-responsive and pointed out to the court that the defendants were attempting to submit altered documents to cover up the disappearance of the "original" conduct report.  On July 26, 2006, the defendants agreed to expunge the findings of guilt from plaintiff's file and records and the case was dismissed.

### C.   Blocking Plaintiff's Ingoing and Outgoing Mail

#### 1.   Mail related to family law case

While plaintiff was litigating the writ of certiorari, defendant Mason began monitoring plaintiff's mail.  Defendant Mason was assigned to monitor his mail "as a result" of plaintiff's challenging his conditions of confinement and litigating the writ.  At the time, plaintiff was engaged in a custody dispute with his ex-wife.  Both parties were pro se litigants.

Plaintiff's former wife called the Wisconsin Secure Program Facility and asked to be removed from plaintiff's approved visitors list.  Someone at the facility issued an order

prohibiting plaintiff from writing to his ex-wife.  Plaintiff contacted defendants Horner and Mason, telling them he was a pro se litigant in an action against his ex-wife, who was also pro se.  In addition, plaintiff showed them a statute and a letter from the judge in the family law case requiring him to send copies of court submissions to his ex-wife and a court order requiring that plaintiff write his ex-wife to schedule visitation and phone calls with his child.

Defendant Mason contacted "judicial assistance" to ask whether the Wisconsin Secure Program Facility could prevent plaintiff from writing his ex-wife and was told it could not.  Nonetheless, on June 6, 2006, defendant Horner wrote a conduct report, charging plaintiff with disobeying direct orders because he mailed his ex-wife a copy of a motion filed with the court and a letter seeking to schedule a phone call with his child.  On June 19, defendant Hable held a disciplinary hearing with plaintiff and stated that regardless of plaintiff's family court orders, he could be prohibited from mailing legal papers or writing to people.  The disposition of the conduct report was an official reprimand.  The reprimand remains in plaintiff's files and affects his ability to enter programs or be placed in favorable lower-security institutions.  Defendant Hable destroyed the letter and motion that plaintiff had attempted to mail to his ex-wife.

On June 9, 2006, defendant Horner wrote a second conduct report, charging plaintiff with disobeying a direct order by sending a copy of a legal paper filed with the court to his ex-wife, mailed together with a letter to his daughter.  On July 18, 2006, Lieutenant Boisen

6

held a disciplinary hearing for plaintiff and concluded that the Wisconsin Secure Program Facility could not punish him for sending legal papers.  However, plaintiff was found guilty for writing a letter to his daughter, a charge not included in the original conduct report and never prohibited in any order.  Plaintiff was sentenced to 15 days' room confinement without recreation and electronics.

Plaintiff filed a timely appeal to defendant Schneider.  On appeal, defendant Schneider was given a document signed by Liuetenant Boisen titled "Reasons for Decision and Evidence Relied On."  In it, Boisen described the reasons for his decision as follows:

> After reviewing the conduct report, evidence and witness statements I find the reporting staff member to be credible based on her experience and training. Olmstead [sic] was given a directive in writing by Lt. Hoeper to cease any further correspondence with Ms. Stegemeyer.  Olmstead claims that he has an order from the courts stating that he needs to send a copy of the legal letter to the other party in the case.  Olmstead said that is what he was doing.  There was also a personal letter written to Ms. Olmstead.  There was no order from the courts stating that he had to send personal letters to her.  Writing a personal letter to Ms. Olmstead is a violation to the written order from Lt. Hoeper.  Inmate is guilty of 303.24(1).

Defendant Schneider affirmed Boisen's decision.  Plaintiff filed a complaint in the inmate complaint review system.  Ellen Ray dismissed the complaint, but the dismissal was reversed on appeal and the second conduct report was expunged from plaintiff's file and records.

On September 12, 2006, defendant Mason admitted in court that she was told she could not punish plaintiff for mailing legal papers to his ex-wife or setting up contact with

7

his child, but had punished plaintiff anyway. The court "scolded" defendant Mason and ordered the mail restrictions to be removed from plaintiff. The initial conduct report remains in the file. Moreover, plaintiff was denied the contact with his child that he had sought.

2.  Mail related to joint appeal of criminal case

For several years, Olmsted and Melissa McDaniel, a co-defendant in his underlying criminal conviction, had been exchanging motions, discovery and defenses to raise in the court of appeals. On July 15, 2006, plaintiff received a notice of non-delivery of mail, informing him that the legal papers that he attempted to mail McDaniel would not be mailed.

On July 17, 2006, defendant Mason began doing background checks on every person that plaintiff wrote and every person that sent him mail and placed a mail restriction between him and McDaniel "out of retaliation" for plaintiff's challenges to defendant Mason's earlier decisions and to the conditions of his confinement.

Plaintiff gave defendant Mason a copy of the judgment of conviction and explained to her that an apparent "no contact order" between the two would not take effect until one or the other was on extended supervision, not during incarceration. In addition, plaintiff showed defendant Mason copies of a "joint appeal" the two were preparing. Plaintiff

8

asserted that the two depended on one another for success on appeal.

Defendant Mason stated that she did not care about plaintiff's appeal or what the judgment of conviction showed.  Plaintiff asked defendant Mason how the two could return their respective discovery documents and appeal papers.  Defendant Mason told plaintiff such a return was prohibited.

On July 18, 2006, plaintiff received another notice of non-delivery of mail, denying him a two-page letter from McDaniel concerning a new issue she had discovered that would help their post conviction relief motion.

Plaintiff filed a complaint on each non-delivery of mail.  Defendant Ray dismissed both, and her son upheld both dismissals.  Plaintiff went "back to court" (although he does not say it, I assume he filed a writ of certiorari).  The court removed the mail restriction between plaintiff and McDaniel; however, the legal papers and letters that were taken from him were never returned.  Plaintiff's post-conviction relief attempts have been "hindered."

OPINION

To start with, plaintiff asserts a laundry list of constitutional rights that he believes defendants violated.  Some have nothing to do with the facts he alleges.  For example, he contends that defendants subjected him to cruel and unusual punishment and violated his right to equal protection by restricting outgoing and incoming mail and disciplining him for

9

sending mail by confining him to his room for 15 days.  However, nothing in the complaint

provides a basis for believing that the conditions of his confinement were anything more

than ordinary prison conditions or that plaintiff was treated differently from others similarly

situated.  Thus, these claims must be dismissed for failure to state a claim.  The three claims

that warrant discussion are plaintiff's claims that defendants' involvement in setting up and

enforcing mail restrictions violated (a) his First Amendment rights; (b) his right of access to

the courts; and (c) his right to due process.

A.  First Amendment Claims

1.  Free Speech

The First Amendment's guarantee of freedom of speech provides protection from

censorship of a prisoner's incoming and outgoing correspondence.  Rowe v. Shake, 196 F.3d

778, 782 (7th Cir. 1999) (citing Turner v. Safley, 482 U.S. 78, 89 (1987); Thornburgh v.

Abbott, 490 U.S. 401 (1989)).  However, "the legitimate governmental interest in the order

and security of penal institutions justifies the imposition of certain restraints on inmate

correspondence."  Procunier v. Martinez, 416 U.S. 396, 412-413 (1974).

In this case, plaintiff complains of two related mail restrictions imposed upon him

and enforced by defendants: a restriction on sending or receiving mail from his criminal co-

defendant and a restriction that prohibited him from sending mail to his ex-wife and

10

daughter.  The first restriction relates to plaintiff's communication with his co-defendant.

Plaintiff alleges that the communication was cut off between the two and that neither had

yet been placed in extended supervision.  In other words, both were still prisoners.  In

Turner, the Supreme Court upheld a *total* bar on inmate-to-inmate correspondence,

concluding that such a bar was constitutional because it was "reasonably related to valid

corrections goals."  Because both plaintiff and his co-defendant were inmates, the restriction

on their communication is constitutional under Turner.

The second restriction involves communication with two people: plaintiff's ex-wife

and plaintiff's daughter.  Plaintiff alleges that the restriction against sending mail to his ex-

wife was generated at his ex-wife's request; in other words, his ex-wife is an unwilling

recipient of his communications.  As the Supreme Court has explained, "a mailer's right to

communicate must stop at the mailbox of an unreceptive addressee."  Rowan v. United

States Post Office Dept., 397 U.S. 728, 736-37 (1970).  In Procunier, 416 U.S. at 408, the

court described the usual considerations of communication by letter: "Communication by

letter is not accomplished by the act of writing words on paper.  Rather, it is effected only

when the letter is read by the addressee.  Both parties to the correspondence have an interest

in securing that result."  When an individual has stated that she does not want to receive

communication from a prisoner, he has no constitutional right to force it upon her.  Because

plaintiff's ex-wife did not want his mail, his rights were not violated when defendants

11

Mason, Horner and Hable enforced a restriction prohibiting him from mailing letters to her, regardless whether he allegedly needed to communicate with her to prosecute his family law case.

As for plaintiff's communications with his daughter, he alleges that he attempted to write her a letter and was punished for it. However, he mailed his letter to his daughter together with correspondence sent to his ex-wife. Although he was punished only for his letter to his daughter, it was sent "to the mailbox" of his ex-wife, the same unwilling recipient who had requested to be taken off his mailing list. Putting aside questions whether (a) the child can read and (b) the child's custodian can determine what communication the child may be exposed to, the letter was sent to the ex-wife to be given to the daughter. Because plaintiff's letter to his daughter was sent along with other correspondence to his ex-wife, who is an unwilling recipient, First Amendment rights were not implicated when he was punished for it, regardless whether the communication was ultimately for his daughter. Therefore, this claim must be dismissed as well.

2. <u>Retaliation</u>

Plaintiff asserts two retaliation claims. First, he alleges that defendant Mason was assigned to monitor his mail in retaliation for his challenging conditions of confinement and litigating a writ of certiorari. However, he does not identify a person who retaliated against

12

him by assigning defendant Mason to monitor his mail.  Without a defendant, this claim cannot succeed.

Next, plaintiff alleges that defendant Mason "began" doing background checks on every person that plaintiff wrote and placed a mail restriction between him and his co-defendant in retaliation for his challenging conditions of confinement and litigating a writ of certiorari.  An act is retaliatory in violation of the First Amendment only if it is not "so trivial that a person of ordinary firmness would not be deterred from holding or expressing those beliefs."  Pieczynski v. Duffy, 875 F.2d 1331, 1333 (7th Cir. 1989).

Examples of harassment that the court of appeals has held to be sufficiently adverse include disciplinary warnings, Pantoja v. American NTN Bearing Manufacturing Corp., 495 F.3d 840, 849 (2007), reprimands, Yoggerst v. Stewart, 623 F.3d 35, 39 (7th Cir. 1980), and even "ridicule for bringing a birthday cake to the office," Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982).  See also Thomas v. Ragland,  324 F. Supp. 2d 950 (W.D. Wis. 2004) (initiating disciplinary investigation at work sufficiently adverse).  However, the question whether an act is sufficiently adverse must be decided in the context of the circumstances of a particular case.  Power v. Summers, 226 F.3d 815, 820 (7th Cir. 2000).  In this case, plaintiff identifies the retaliatory act as defendant Mason's initiation of background checks on July 17, 2006 and the subsequent decision to place a restriction on mail between plaintiff and his co-defendant.  However, two days before the alleged retaliatory act, plaintiff had

13

already received a notice that his papers would not be delivered to his co-defendant. Thus, even before the retaliatory act, prison officials had determined co-defendant McDaniel's background and restricted mail between plaintiff and McDaniels. In this context, defendant Mason's retaliatory act would not have deterred a person of ordinary firmness; it was cumulative of acts already performed. Therefore, plaintiff fails to state a claim for retaliation.

## B. Access to the Courts Claims

Plaintiff contends that defendants Thurmer and Anderson violated his right of access to the courts by blocking his mail because the restrictions interfered with his attempts to seek visitation with his daughter in his family law case and with his attempts to seek post-conviction relief in his criminal case. The constitutional right of access to the courts is actionable only if "the plaintiff has suffered an injury over and above the denial." Walters v. Edgar, 163 F.3d 430, 433-34 (7th Cir. 1998) (citing Lewis v. Casey, 518 U.S. 343 (1996)). A plaintiff is injured by denial of access where such denial frustrates a "separate and distinct right to seek *judicial relief* for some wrong." Christopher v. Harbury, 536 U.S. 403, 415 (2002) (emphasis added). At a minimum, a complaint alleging a denial of access to the courts must describe an underlying *cause of action* and how it has been lost or impeded. Id. at 415-16.

14

Both of plaintiff's claims fail on this ground.  Plaintiff was not blocked from filing any paper with the court or seeking any judicial relief in either underlying action.  Instead, plaintiff was blocked from communicating with third parties.  Plaintiff alleges that the letters he would have sent his ex-wife would have allowed him to schedule visitation pursuant to an order already in place and would have complied with a court order to send copies of motions to his ex-wife.  There is no basis to infer that the blocked mail ever affected his attempt to seek relief from the court at any time.

As for defendants' interference with his communication with his co-defendant, it is true that inmates have a right to receive legal assistance from others, but only to the extent "necessary . . . for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts."  Shaw v. Murphy, 532 U.S. 223, 231 n.3 (2001) (citing Lewis, 518 U.S. at 350-351)).  Plaintiff alleges that the interference "hindered" his postconviction relief attempts, which he identifies as the appeal he was preparing at the time before the state court of appeals.  An inmate "is not entitled to the assistance of a particular lay assistant."  Gometz v. Henman, 807 F.3d 113, 116 (7th Cir. 1986); although plaintiff points out that the particular assistant was his co-defendant, I am skeptical that the ability to work together with a co-defendant is especially important at the appellate level, where it is law, and not facts, that matters (particularly in this case, where plaintiff pleaded no contest to the charges, as the online court records show).  More

15

problematic to plaintiff's claims, online court records at Wisconsin Court Access Program show that plaintiff was represented during that appeal; plaintiff cannot assert a need to receive legal assistance from a co-defendant when he is represented by counsel.  Johnson v. Avery, 393 U.S. 483, 488 (1969) (no right to legal assistance from jailhouse lawyer where available alternative exists).  Plaintiff fails to state a claim for violation of his right of access to the courts; his claims will be dismissed.

## C.  Due Process

Plaintiff contends that defendants violated his due process rights by restricting his mail and disciplining him for behavior not identified in his conduct report, which led to a conduct report in his file and 15 days' room confinement.  The Fourteenth Amendment prohibits states from depriving "any person of life, liberty or property without due process of law."  U.S. Const. Amend. XIV.  Section 1, article 1 of the Wisconsin Constitution affords the same protections as that of the due process clause, Chicago & N.W. Railway Co. v. La Follette, 43 Wis. 2d 631, 643, 169 N.W.2d 441, 446 (1969); therefore, to the extent plaintiff's due process claims rise or fall, so do his state constitutional claims.

A procedural due process claim against government officials requires proof of inadequate procedures as well as interference with a liberty or property interest.  Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989).  In the absence of a protected

16

liberty or property interest, "the state is free to use any procedures it chooses, or no procedures at all." Montgomery v. Anderson, 262 F.3d 641, 644 (7th Cir. 2001). Therefore, the first question in any due process analysis is whether a protected liberty or property interest has been infringed.

In the prison context, liberty interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless impose [ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 483-484 (1995).

Plaintiff's claim does not meet the demanding Sandin standard. Fifteen days of room confinement is at worst a form of segregation; fifteen days in segregation is hardly "atypical and significant." Under Sandin, due process is not implicated in the prison setting until there is a "substantial *incremental* deprivation" of liberty beyond those limitations considered ordinary incidents of prison life. Wagner v. Hanks, 128 F.3d 1173, 1174 (7th Cir. 1997) (emphasis in original). When the action a plaintiff challenges is solely his confinement in segregation "for a period that does not exceed the remaining term of the prisoner's incarceration," the court of appeals has stated that "it is difficult to see how after Sandin it can be made the basis of a suit complaining about a deprivation of liberty." Wagner, 128 F.3d at 1176. This is because due process is implicated only for treatment that is "atypical

17

and significant" in relation to "ordinary incidents of prison life." <u>Sandin</u>, 515 U.S. at 483-84.

It is commonplace for prisoners to be placed in segregation for a number of reasons unrelated to discipline, making occasional segregation an "ordinary incident of prison life." <u>Wagner</u>, 128 F.3d at 1176.  Regardless how one-sided or unfair petitioner's disciplinary hearing was, it did not violate petitioner's due process rights because petitioner had no liberty interest in staying out of segregation.  Under <u>Sandin</u>, placement in segregation is not an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin</u>, 515 U.S. at 483-84; <u>Holly v. Woolfolk</u>, 415 F.3d 678 (7th Cir. 2005) ("being placed in segregation is too trivial an incremental deprivation of a convicted prisoner's liberty to trigger the duty of due process").  Accordingly, plaintiff's claim that defendants violated his due process rights for their involvement in his receiving 15 days of room confinement must be dismissed for his failure to state a claim upon which relief may be granted.

ORDER

IT IS ORDERED that

1.  This action is DISMISSED pursuant to 28 U.S.C. § 1915A because the claims in the complaint fail to state a claim upon which relief may be granted.

18

2.  The clerk of court is directed to enter judgment for defendants and close this case.

3  A strike will be recorded against plaintiff in accordance with 28 U.S.C. § 1915(g).

Entered this 3rd day of September, 2008.

BY THE COURT:


 /s/

_____
BARBARA B. CRABB
District Judge

19